JMH:MS
F. #2020R01106

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE APPLE IPHONE 14 PRO BEARING INTERNATIONAL MOBILE EQUIPMENT IDENTITY NUMBER 352803720400556, CURRENTLY IN U.S. CUSTOMS AND BORDER PROTECTION CUSTODY IN THE EASTERN DISTRICT OF NEW YORK | **APPLICATION FOR A SEARCH WARRANT FOR AN ELECTRONIC DEVICE**<br><br>Case No.  23-MJ-1137 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Rajeev Bhatia, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"). I have been a Special Agent with HSI for approximately 17 years. I have investigated numerous criminal offenses, including offenses involving fraud related to automobiles. I have participated in the execution of search warrants, including search warrants for electronic evidence. As a result of my training and experience, I am familiar with techniques and methods of operation used by individuals involved in criminal

activity—both to accomplish their criminal goals and to conceal their activities from detection by authorities.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.     The property to be searched is a purple Apple iPhone 14 Pro, with a transparent case, bearing international mobile equipment identity number 352803720400556 (the "Device").  The Device is currently located in U.S. Customs and Border Protection ("CBP") custody in the Eastern District of New York, having been lawfully seized as described herein.

5.     Photographs of the front and back of the Device, as well as its case, are included below:

2



6.      The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

7.      Based on the facts as set forth in this affidavit, there is probable cause to believe that DANIEL NOZADZE, MORIS NOZADZE, SERGO SIMONYAN, and others have engaged in violations of Title 49, United States Code, Sections 32703(1) (installation of mileage blocker device), 32703(2) (tampering with motor vehicle odometer), and 32703(4) (odometer fraud conspiracy) (the "Subject Offenses").  On November 28, 2023, a grand jury sitting in this district returned an indictment (23-CR-490) charging DANIEL, MORIS, and SIMONYAN, with the Subject Offenses.  On December 13, 2023, DANIEL, MORIS, and SIMONYAN were each arrested and arraigned before the Honorable Marcia M. Henry, United States Magistrate Judge

for the Eastern District of New York.  The indictment is attached as Exhibit 1 and incorporated herein by reference.  The Device was seized at the time of DANIEL's arrest.  As set forth below, there is probable cause to believe that the Device contains evidence, fruits, and instrumentalities of the Subject Offenses.

## PROBABLE CAUSE

8.      As explained above, DANIEL, MORIS, and SIMONYAN were recently charged by indictment and arrested for violation of the Subject Offenses.  See Exhibit 1.  The charges arise from their participation in a scheme to manipulate, or "roll back," mileage readings on motor vehicle odometers in exchange for payment.  As part of this scheme and in exchange for payment, DANIEL, MORIS, and SIMONYAN also installed devices, known as "mileage blockers," "mileage stoppers" or "speed filters" (collectively, "Mileage Block Devices"), which disabled motor vehicle odometers or reduced the rate at which they accumulated mileage, causing the odometers to produce false mileage readings.  DANIEL, MORIS, and SIMONYAN performed these unlawful services in front of MORIS's residence on Batchelder Street in Brooklyn, New York, and at various other locations along the eastern seaboard of the United States, including at motor vehicle dealerships.  As charged in the indictment, the scheme began in approximately January 2012, and continued until at least approximately November 2023.

9.      On multiple occasions in 2022 and 2023, an undercover New York City Police Department officer (the "UC") paid DANIEL, MORIS, and/or SIMONYAN to roll back odometers and/or install Mileage Blocker Devices on undercover law enforcement vehicles.  After each such transaction, law enforcement officers tested the Mileage Blocker

Device and confirmed that it produced a false mileage reading.

10.     In addition to probable cause that DANIEL, MORIS and SIMONYAN committed the Subject Offenses, there is also probable cause to believe that the Device contains evidence of the Subject Offenses.  DANIEL was arrested on December 13, 2023 in the hallway outside the door to his apartment unit.  DANIEL was barefoot at the time, and officers asked him, in substance, whether they could enter the apartment to retrieve shoes and other items he would need for the day.  Officer explained, in substance, that DANIEL would need identification, and also suggested that he may want to bring his phone or any medication.  DANIEL consented to officers entering the apartment.  Officers asked DANIEL, in substance, whether anyone else was present in the apartment, and DANIEL responded, in substance, that his girlfriend was present.  Officers entered the apartment with DANIEL and called out to his girlfriend.  A female emerged from elsewhere in the apartment, whom DANIEL instructed, in substance, to retrieve his wallet and cell phone. The female complied with DANIEL's request, retrieving his wallet and cell phone (i.e., the Device) from a bedroom, and handed them to the arresting officers.  The officers removed DANIEL's identification from the wallet, returned the wallet, and maintained custody of the Device.  Records provided by Verizon Communications, Inc. show that the subscriber for the Verizon account associated with the Device is MORIS NOZADZE, and that an additional contact listed for the account is DANIEL NOZADZE.

11.     Evidence gathered during the government's investigation indicates that DANIEL used cell phones, including the Device, in furtherance of the Subject Offenses. Specifically, in advance of the undercover transactions described above, the UC

communicated with MORIS and DANIEL via two cell phone numbers, one of which is the

cell phone number associated with the Device.  For example, on September 6, 2022, the UC

called DANIEL via the phone number associated with the Device to discuss meeting the next

day to "take care of" an HSI undercover vehicle.  DANIEL agreed, in substance, to meet the

following day.  The UC also texted DANIEL "Let me know if we're 100% Gucci for

tomorrow" and included a photograph of the HSI undercover vehicle.  DANIEL replied

"Yes" and provided a location to meet.  Screenshots of those messages are included below:



12.     Similarly, on May 15, 2023, the UC again communicated with

DANIEL via the phone number associated with the Device.  In substance, the UC arranged a

date to bring his vehicle to DANIEL to roll back its mileage and install a Mileage Blocker

Device.  As recently as November 13, 2023, SIMONYAN and MORIS installed a Mileage

Blocker Device on an HSI undercover vehicle as part of the scheme.

13.     On May 24, 2023, the Honorable James R. Cho, United States

Magistrate Judge for the Eastern District of New York, issued a search warrant under

Magistrate Docket number 23-496 authorizing the search of, among other things, an Apple

iCloud account associated with DANIEL's email address.  Records provided by Apple, Inc.

in response to the search warrant include images of Mileage Blocker Devices and iMessage

conversations between DANIEL and SIMONYAN in which they discuss cars and "filters."

Based on my training and experience, I know that records and information stored on Apple

iPhones are often automatically uploaded to associated iCloud accounts.

14.     In addition, based on my training and experience, I know that

individuals who engage in fraud schemes frequently communicate with one another using

electronic devices, including through phone calls, text messages, e-mail, and instant

messaging applications.  I further know that individuals who engage in such schemes

frequently plan and execute their crimes, including arranging unlawful transactions, using

electronic devices, and that information about those transactions, including communications

and location information, is often stored on the electronic devices.

15.     Indeed, here, as explained above, the UC communicated with DANIEL

via the Device on multiple occasions to arrange undercover transactions.  Communications

and location information from the Device will likely confirm DANIEL's role, and also help

to identify additional members of the conspiracy.  In addition, the Device likely contains

images or photographs of Mileage Blocker Devices, tools and devices used to install and

activate Mileage Blocker Devices, and tools and devices used to rollback motor vehicle odometers; records of purchases and shipments of Mileage Blocker Devices; records of unlawful transactions; and vehicle schematics and manuals.  The images of Mileage Blocker Devices and discussions of cars and "filters" found in DANIEL's iCloud account further demonstrates that the Device likely contains evidence of the Subject Offenses.

16.     The Device is currently in CBP custody in the Eastern District of New York.  The Device was seized by HSI at the time of DANIEL's arrest.  HSI then transferred the Device to the custody of CBP in the Eastern District of New York.  In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the government.  Because the charged scheme began in approximately January 2012 and continued until at least approximately November 2023, the date range for the warrant sought herein is from January 2012 to present.

### TECHNICAL TERMS

17.     Based on my training and experience, I use the following technical terms to convey the following meanings:

   a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and

8

from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.

9

Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs

usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

11

18.     Based on my training, experience, and research I know that the Devices each have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

19.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

20.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.   Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.   The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21.   *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

13

22.     *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23.      I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

RAJEEV S BHATIA
Digitally signed by RAJEEV S BHATIA
Date: 2023.12.26 14:24:08 -05'00'

Rajeev Bhatia
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me  by telephone
on December 26, 2023:                    ^

*Marcia M. Henry*

HONORABLE MARCIA M. HENRY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

15

## ATTACHMENT A

1.      The property to be searched is a purple Apple iPhone 14 Pro, with a transparent

case, bearing international mobile equipment identity number 352803720400556 (the "Device").

The Device is currently located in U.S. Customs and Border Protection ("CBP") custody in the

Eastern District of New York.  Photographs of the front and back of the Device, as well as its

case, are included below:



This warrant authorizes the forensic examination of the Device for the purpose of

identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of

Title 49, United States Code, Sections 32703(1) (installation of mileage blocker device),

32703(2) (tampering with motor vehicle odometer), and 32703(4) (odometer fraud conspiracy)

(the "Subject Offenses"), by DANIEL NOZADZE, MORIS NOZADZE, SERGO SIMONYAN,

and others, from January 2012 to present, including:

    a.  Records related to odometer tampering and the installation of mileage blocker

devices, including images of mileage blocker devices, and tools and devices used

to install or activate mileage blocker devices or tamper with motor vehicle

odometers; records including accounting records, ledger books and sheets;

notations; account balances; photographs of associates; records of purchases and

shipments of mileage blocker devices, records of unlawful transactions, and

vehicle schematics and manuals;

    b.  Records regarding proceeds of the Subject Offenses, including images or

descriptions of United States currency, money orders, cashier checks; and records

of the electronic transfer of funds;

    c.  Communications among co-conspirators, including communications relating to

the installation of mileage blocker devices or tampering with motor vehicle

odometers;

    d.  The identity of the person(s) who sent communications to, and/or received

communications from MORIS NOZADZE, DANIEL NOZADZE and SERGO

SIMONYAN about matters relating to the Subject Offenses, including records
that help reveal their whereabouts;

e.  Location information showing where MORIS NOZADZE, DANIEL NOZADZE
and SERGO SIMONYAN obtained mileage blocker devices, met with co-
conspirators, and performed installations;

f.  Shipping records related to the purchase, sale, or shipment of mileage blocker
devices or tools and devices used to install or activate mileage blocker devices or
tamper with motor vehicle odometers;

g.  All bank records, checks, credit card bills, account information, and other
financial records.

2.      Evidence of user attribution showing who used or owned the Device at the time
the things described in this warrant were created, edited, or deleted, such as logs, phonebooks,
saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items
of evidence in whatever form and by whatever means they may have been created or stored,
including any form of computer or electronic storage (such as flash memory or other media that
can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored
information seized or copied pursuant to this warrant in order to locate evidence, fruits, and
instrumentalities described in this warrant.  The review of this electronic data may be conducted
by any government personnel assisting in the investigation, who may include, in addition to law

2

enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the investigative agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# EXHIBIT 1

JMH:MS
F. #2020R01106

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

MORIS NOZADZE,
DANIEL NOZADZE and
SERGO SIMONYAN,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
\*  NOVEMBER 28, 2023  \*
BROOKLYN OFFICE

I N D I C T M E N T

Cr. No. 23-CR-490
(T. 18, U.S.C., §§ 2 and 3551 et seq.;
T. 49, U.S.C., §§ 32703(1), 32703(2),
32703(4) and 32709(b))

Judge William F. Kuntz, II
Magistrate Judge Lois Bloom

THE GRAND JURY CHARGES:

At all times relevant to this Indictment, unless otherwise indicated:

I.     The Defendants

     1.     The defendant MORIS NOZADZE was a resident of Brooklyn, New York.

     2.     The defendant DANIEL NOZADZE was a resident of Brooklyn, New York, and the son of MORIS NOZADZE.

     3.     The defendant SERGO SIMONYAN was a resident of Brooklyn, New York, and the neighbor of MORIS NOZADZE.

II.     Background on Odometers and Relevant Statutes

     4.     Motor vehicle odometers were instruments used for measuring and recording the distance driven or "mileage" of a motor vehicle.

5.       "Buyers of motor vehicles rel[ied] heavily on the odometer reading as an index of the condition and value of a vehicle" and "an accurate indication of the mileage assist[ed] a buyer in deciding on the safety and reliability of the vehicle."   49 U.S.C. § 32701.

6.       It was unlawful to "advertise for sale, sell, use, install, or have installed, a device that makes an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven, as registered by the odometer within the designed tolerance of the manufacturer of the odometer."   49 U.S.C. § 32703(1).

7.       It was also unlawful to "disconnect, reset, alter, or have disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer."   49 U.S.C. § 32703(2).

8.       It was unlawful to conspire to violate Section 32703 of Title 49 of the United States Code.   See 49 U.S.C. § 32703(4).

III.    Overview of the Scheme

9.       From approximately January 2012 to November 2023, the defendant MORIS NOZADZE operated a business (the "NOZADZE Business") in which he manipulated, or "rolled back," mileage readings on motor vehicle odometers in exchange for payment.   As part of this business and in exchange for payment, MORIS NOZADZE also installed devices, known as "mileage blockers," "mileage stoppers" or "speed filters" (collectively, "Mileage Blocker Devices"), which disabled motor vehicle odometers or reduced the rate at which they accumulated mileage, causing the odometers to produce false mileage readings.   MORIS NOZADZE performed these unlawful services in front of his residence in Brooklyn, New York, which location is known to the Grand Jury, and at various other locations along the eastern seaboard of the United States, including at motor vehicle dealerships.

10.     Defendants DANIEL NOZADZE and SERGO SIMONYAN worked for defendant MORIS NOZADZE and participated in the NOZADZE Business.   DANIEL NOZADZE and SIMONYAN personally rolled back motor vehicle odometers and installed Mileage Blocker Devices on vehicles in exchange for payment.   DANIEL NOZADZE also assisted MORIS NOZADZE in communicating with customers and arranging times, locations and prices for the rollback of motor vehicle odometers and the installation of Mileage Blocker Devices.

11.     On multiple occasions in 2022 and 2023, an undercover New York City Police Department officer paid the defendants MORIS NOZADZE, DANIEL NOZADZE and/or SERGO SIMONYAN to roll back odometers and/or install Mileage Blocker Devices on undercover law enforcement vehicles.   After each such transaction, law enforcement officers tested the Mileage Blocker Device and confirmed that it produced a false mileage reading.

<u>COUNT ONE</u>
(Conspiracy to Commit Odometer Fraud)

12.     The allegations contained in paragraphs one through eleven are realleged and incorporated as if fully set forth in this paragraph.

13.     In or about and between January 2012 and November 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MORIS NOZADZE, DANIEL NOZADZE and SERGO SIMONYAN, together with others, did knowingly and willfully conspire to: (a) advertise for sale, sell, use, install and have installed, one or more devices, to wit: Mileage Blocker Devices, that make an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven, as registered by the odometer within the designed tolerance of the manufacturer of the odometer, contrary to Title 49, United States Code, Section 32703(1); and (b) disconnect, reset, alter and have

4

disconnected, reset and altered, one or more odometers of one or more motor vehicles intending

to change the mileage registered by the odometer, contrary to Title 49, United States Code,

Section 32703(2).

(Title 49, United States Code, Sections 32703(4) and 32709(b); Title 18, United

States Code, Sections 3551 et seq.)

## COUNT TWO
(Installation of Mileage Blocker Device)

14.     The allegations contained in paragraphs one through eleven are realleged

and incorporated as if fully set forth in this paragraph.

15.     On or about September 7, 2022, within the Eastern District of New York

and elsewhere, the defendant DANIEL NOZADZE, together with others, did knowingly and

willfully advertise for sale, sell, use, install and have installed, one or more devices, to wit:

Mileage Blocker Devices, that make an odometer of a motor vehicle register a mileage different

from the mileage the vehicle was driven, as registered by the odometer within the designed

tolerance of the manufacturer of the odometer.

(Title 49, United States Code, Sections 32703(1) and 32709(b); Title 18, United

States Code, Sections 2 and 3551 et seq.)

## COUNT THREE
(Installation of Mileage Blocker Device)

16.     The allegations contained in paragraphs one through eleven are realleged

and incorporated as if fully set forth in this paragraph.

17.     On or about October 11, 2022, within the Eastern District of New York

and elsewhere, the defendant MORIS NOZADZE, together with others, did knowingly and

willfully advertise for sale, sell, use, install and have installed, one or more devices, to wit:

Mileage Blocker Devices, that make an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven, as registered by the odometer within the designed tolerance of the manufacturer of the odometer.

(Title 49, United States Code, Sections 32703(1) and 32709(b); Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT FOUR
(Installation of Mileage Blocker Device)

18.     The allegations contained in paragraphs one through eleven are realleged and incorporated as if fully set forth in this paragraph.

19.     On or about November 13, 2023, within the Eastern District of New York and elsewhere, the defendant SERGO SIMONYAN, together with others, did knowingly and willfully advertise for sale, sell, use, install and have installed, one or more devices, to wit: Mileage Blocker Devices, that make an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven, as registered by the odometer within the designed tolerance of the manufacturer of the odometer.

(Title 49, United States Code, Sections 32703(1) and 32709(b); Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT FIVE
(Tampering with Motor Vehicle Odometer)

20.     The allegations contained in paragraphs one through eleven are realleged and incorporated as if fully set forth in this paragraph.

21.     On or about December 15, 2020, within the Eastern District of New York and elsewhere, the defendant DANIEL NOZADZE, together with others, did knowingly and

6

willfully disconnect, reset, alter and have disconnected, reset and altered, one or more odometers

of a motor vehicle intending to change the mileage registered by the odometer.

(Title 49, United States Code, Sections 32703(2) and 32709(b); Title 18, United

States Code, Sections 2 and 3551 et seq.)

## COUNT SIX
(Tampering with Motor Vehicle Odometer)

22.     The allegations contained in paragraphs one through eleven are realleged

and incorporated as if fully set forth in this paragraph.

23.     On or about November 13, 2023, within the Eastern District of New York

and elsewhere, the defendant SERGO SIMONYAN, together with others, did knowingly and

willfully disconnect, reset, alter and have disconnected, reset and altered, one or more odometers

of a motor vehicle intending to change the mileage registered by the odometer.

(Title 49, United States Code, Sections 32703(2) and 32709(b); Title 18, United

States Code, Sections 2 and 3551 et seq.)

A TRUE BILL

_Mary Beth Glickman_
FOREPERSON

_By Carolyn Pokorny, Assistant U.S. Attorney_

BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2020R01106
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

MORIS NOZADZE, DANIEL NOZADZE and SERGO SIMONYAN,

Defendants.

## INDICTMENT

(T. 18, U.S.C., §§ 2 and 3551 et seq.; T. 49, U.S.C., §§ 32703(1), 32703(2), 32703(4) and 32709(b))

*A true bill.*

_____
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
*Clerk*

*Bail, $* _____

_____

*Matthew Skurnik, Assistant U.S. Attorney (718) 254-6231*